IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

Civil Action No. 1:21-cv-03823-PGG

BRUCE P. KRIEGMAN
as Chapter 11 Trustee for LLS America,
        Plaintiff,

v.

ALEX MIRROW and SAVE IT, LLC,
        Defendants.

## PLAINTIFF'S OBJECTION TO FATIMA MIRROW'S MOTION TO DETERMINE COMPETENCY AS A DEPONENT PURSUANT TO SUBPOENA

Plaintiff, Bruce P. Kriegman, as Chapter 11 Trustee for LLS America (the "Trustee"), by his attorney, Bruce E. Rohde of Campbell Killin Brittan and Ray, LLC, objects to Fatima Mirrow's Motion to Determine Competency as a Deponent Pursuant to Subpoena ("Motion"), and in support, states as follows:

### INTRODUCTION

The Motion is nothing new. The Mirrows have attempted to use her age, physical condition and claimed dementia to avoid being deposed, when she has critical information to offer, for years, but their efforts have never bourn judicial scrutiny. The Motion should fare no better. The *whole point* of Ms. Mirrow's deposition is to permit *the Trustee* to access her status and obtain some very basic, but highly important, information about her affairs and dealings with her son. This Court, after two hearings, has already accessed *and rejected* her objections based on her age and claimed infirmities and crafted a means to respect and take her status into account (limiting the time for her

1

deposition and requiring it be conducted remotely from her home if she wishes). Now Ms. Mirrow asks the Court determine her competency based only on the statements and arguments of her counsel and carefully selected, incomplete, unauthenticated and unsworn, records and, in the meantime, to delay everything even longer (during which time Ms. Mirrow's health could probably only get worse).[1] The Court should decline the invitation.

## THE HISTORY OF UNSUPPORTED ALLEGATIONS OF INCOMPETENCY

Initially, it is important to keep in mind that the problems associated with obtaining discovery from Ms. Mirrow, notwithstanding her age and condition, are ones of the Mirrrows' own making. Alex Mirrow and his mother have made her a necessary subject of discovery by commingling their money (including ill-gotten gains from the massive Ponzi Scheme Alex Mirrow was adjudicated to have promoted and fed by defrauding investors, particularly his fellow Jehovah Witnesses) and permitting the use of Ms. Mirrow's investments, bank accounts and credit cards as Alex and Angela Mirrow's "piggy bank" to pay all of their living expenses (Alex and Angela do not work) and fund their travel all over the world.[2]

When it suits their purpose of avoiding inquiry, Ms. Mirrow is said to be incompetent, but when her competency suits their purposes, then she is said to be competent.

---

[1] In the Motion, Ms. Mirrow's counsel "asks that [Ms. Mirrow's] current mental and physical state be considered, and that if this Court determines that she meets the necessary mental standards to be required to submit to a deposition, that the time to do so be extended given her current physical ailments," but has not suggested how that determination should be accomplished See Motion, pp. 5-6.

[2] The Trustee obtained the assistance of a forensic accountant to review and analyze the final records the Mirrows eventually produced and which the Trustee subpoenaed from several banks.

In 2015, when the Trustee needed to depose Ms. Mirrow to learn of Alex Mirrow's whereabouts (after he had managed to avoid service of process for many months), Ms. Mirrow, through the Mirrows' CPA and attorney John Green, filed an Emergency Motion to Quash the Trustee subpoena to appear for deposition based in part on her being an "82-year-old stroke victim" who "is suffering from disability that has rendered her incompetent to provide testimony." *See* Amended Emergency Motion to Quash (Doc. 16 filed December 28, 2015) attached as **Exhibit A, pp. 1-2.** The Court (U.S. District Court for the District of Colorado) denied the Motion. *See* Minute Order (Doc. 31 filed July 26, 2016) attached as **Exhibit B,** p. 2. (noting "these bald assertions made in the motion are not supported by any evidence. Again, Movants have the burden and without any legal support or factual evidence to support their bald assertions, they have not met their burden.")

Ms. Mirrow was deposed and was fully able to understand and answer the undersigned questions. She testified that her son Alex and his wife Angela had been living her and her husband's (now deceased) apartment at the back of their house since shortly after the Judgment was entered against Alex Mirrow (except when they were at their condo in Playa Del Carmen, Mexico), so it became obvious that Alex and his wife had simply been refusing to come to the door when the process servers came knocking. Accordingly, on the Trustee's motion, the Court permitted service by posting and mail.

In 2019, when the Trustee moved the Court issue subpoenas requiring Ms. Mirrow to produce documents re her finances (bank statements, credit card statements, investment account statements and the like) and appear for a deposition, Ms. Mirrow objected, arguing she had "failing

3

health and memory." *See,* Response and Objection to Motion for Issuance of Subpoenas (Doc. 102 filed April 26, 2019), a copy of which is attached as **Exhibit C,** p. 3 The Court denied rejected her objection and issued the Subpoenas. *See* Minute Order attached as **Exhibit D**.

In 2021, the Trustee was finally able to serve Alex Mirrow and his wife. They produced documents which showed they had been using Ms. Mirrow's bank accounts and credit cards as their own (including, as previously stated, to pay all of their living expenses and funding their travel all over the world). The Trustee concluded Alex Mirrow was making what amounted to fraudulent transfers and using Ms Mirrow as his alter ego, all to avoid the Trustee's collection efforts.  So, now that it was in their best interest to claim Ms. Mirrow was not being used or manipulated, and competent, both Alex and Angela Mirrow testified that Ms. Mirrow was able to make her own decisions about her financial affairs. *See* transcript of Angela Mirrow's deposition attached as **Exhibit E** pp.15:10-17:4 ("Q: **Does she have dementia? A. Not that I'm aware of...**Q Is she able to make her own decisions about what she wants to do? A Yes. Q **Does she make her own decisions regarding her financial affairs? Absolutely"**) and transcript of Alex Mirrow's deposition attached as **Exhibit F,** pp. 9;10-10:8 (Q. Does she suffer from dementia? A: ...I know that we communicate very well back and forth....I don't know what she's been diagnosed with , to tell you the truth. But so far, it hasn't affected her ability, you know, to have discussions with us and tell us what she wants or doesn't want.")

Later in 2021, when, the Trustee had the Subpoenas directed to Ms. Mirrow personally served on her, Ms. Mirrow moved to quash them, arguing, as she had in the past, that they were unduly burdensome and this time, that "she is presently in no condition to set through yet another

deposition due to heart trouble. She suffers from severe aortic valve calcifications, severe mitral annular calcifications, and cardiomegaly among other heart conditions, and attached a copy of her latest angiogram and a 2019 Brain MRI which evidently showed she had a stroke sometime after 2016, and a 2016 Geriatrics Report (but not any affidavits from any treating physician). *See* Doc 1, pp.5 and 6. After a hearing, this Court denied the motion to quash and ordered Ms. Mirrow to produce the requested documents and appear for a brief deposition.

Then, when counsel could not reach agreement on the logistics, including arrangements for her to sign a handwriting exemplar in real time, this Court conducted another (in person) hearing, and set a date by which Ms. Mirrow's deposition was to take place—July 15, 2022. Ms. Mirrow did not produce any medical or mental health records or information at that hearing, On the contrary, her counsel agreed to make her available for a deposition (to be conducted remotely) and suggested she go to a notary to sign the handwriting exemplar.

The undersigned tried to schedule the deposition (and potential appearance before a notary), he was put off, until her counsel reported she had been hospitalized and, after her discharge, that she was still "under the weather." *See* email correspondence attached as **Exhibit G.** The undersigned was not told that Ms. Mirrow had underwent a Montreal Cognitive Assessment ("MoCa") which, according to her instant Motion, was done June 13, 2022.

Now Ms. Mirrow has produced handpicked, incomplete, unauthenticated and unsworn records regarding her recent medical assessment and, for the first time, mental testing.

## MS. MIRROW HAS NOT MET HER BURDEN

Ms. Mirrow bears the heavy burden of showing she cannot be deposed. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87-88 (S.D.N.Y. 2016) (citing *Freydl v. Meringolo,* 09 Civ. 07196 (BSJ) (KNF), 2011 U.S. Dist. LEXIS 67742, 2011 WL 2 5660 8-7, at *3 (S.D.N.Y. June 16, 2011). "Specifically, the resisting party must show how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. *Id.* (citing *Sokol v. Wyeth, Inc*., 07 Civ. 8442, 2008 U.S. Dist. LEXIS 60976, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008). She has failed to meet that burden.

The Court should not accept what Ms. Mirrow's counsel says about her condition at face value (regarding her physical or mental condition or status) but, instead, should require her to produce clear, complete, reliable evidence that she is truly incompetent. The statements and arguments of her counsel are not evidence. *Zong Yi Wang v. Sessions*, 706 F. A. App's 8. 10 (2nd. Cir. 2017 ("an attorney's statements in a brief are not evidence").

Ms, Mirrow's present medical condition is unsubstantiated. The records she has chosen to show the Court only show that she **a**pparently went to the hospital on July 4, 2022, was tested, and was determined to have a low hemoglobin, and was discharged with recommendations she see three different doctors for follow-up care. However, absent from the records are: (a) the Discharge Summary showing her diagnosis, condition and discharge instructions; (b) any records regarding her follow-up testing, care or treatment, diagnosis or prognosis; or (c) any sworn affidavit or declaration for any of her health care providers affirming she is not fit to be deposed.

Ms. Mirrows' mental capacity is also unsubstantiated. While she may have been tested on June 13, 2022, absent from the records chosen to be shown the Court are: (a) the *rest* of the test; (b)The test *results* and any conclusions or commentary; or (c) Any sworn affidavit or declaration for any of her mental health care providers affirming she is not fit to be deposed.

In any case, one thing is clear, Ms. Mirrow is able to get out and about as needed (or wanted by others).

### ANY POA IS SUSPECT.

Ms. Mirrow's counsel "reminds" the Court that Ms. Mirrow's finances are "handled" by her son Alex and goes on to state that "as the Court pointed out itself, there is nothing nefarious about this as Alex has a valid Power of Attorney…," and then claims it is "egregious" that the Trustee has known about the POA since he first deposed Ms. Mirrow. *However, when deposed, Ms. Mirrow said* **she did not know what a power of attorney was**, *and when Alex Mirrow was deposed, he testified* **he did know of the POA, was not aware that it was in effect, and had that the had never used it.** *See* transcript of Fatima Mirrow's deposition, a copy of which is attached as **Exhibit H,** pp. 26: 20-27:24 and Exhibit 5**,** and **Exhibit F** (Alex Mirrow deposition transcript) pp 17:8—18:3 and Exhibit 2a.

### THE PERRY FILINGS MEAN NOTHING.

Ms. Mirrow's counsel proceeds to reference spurious "Perry filings" which allegedly demonstrate the Trustee "has knowingly misrepresented [Alex] Mirrow's dealings with his mother "for the purpose of gaining leverage with the court with the intent to further billing…" Motion, p. 5.

Who is David Perry? He is a longtime friend of Alex Mirrow who lives in Sri Lanka. During the Ponzi, Alex Mirrow gave him hundreds of thousands of dollars to invest in any way he saw fit, and then doled it out to Alex as needed or requested. He still holds an unknown amount of the money but now disingenuously claims it belongs to him (so it is beyond reach of the Trustee). *See* **Exhibit F**, (transcript of Alex Mirrow deposition) pp. 14:21-15:6 and 63:10-72-12.

While Magistrate Judge Neureiter declined to strike the Perry filings or restrict public access to them he essentially found they were meaningless---he certainly did not make any findings that they had any basis or merit. On the contrary, three days after Perry filed his "Response and Request for Modification of Record" and 250 pages of materials, Magistrate Judge Neureiter issued a Minute Order where he ruled, *sua sponte*: The Court will not address any of Mr. Perry's requests for legal relief because Mr. Perry is not a party in this matter." *See* **Exhibit I** (Doc. #240 filed September 13, 2021).

WHEREFORE, the Trustee prays the Court:

1. Order Ms. Mirrow, at her sole cost and expense, within a time certain, appear for her deposition (remotely, but with no one other than her counsel present, as previously ordered by the Court); and

2. Order Ms. Mirrow to appear before a notary of the Trustee's choosing by a time certain to sign handwriting exemplars (where she prints and signs her name in the presence of the notary three times).

Dated: This 19th day of July, 2022.

**CAMPBELL KILLIN BRITTAN & RAY, LLC**

<u>s/ Bruce E. Rohde</u>
Bruce E. Rohde, #11465
Campbell Killin Brittan & Ray, LLC
270 St. Paul Street, Suite 200
Denver, Colorado 80206
Phone: 303-322-3400
Fax: 303-322-5800
BRohde@ckbrlaw.com

**Attorneys for Plaintiff Bruce P. Kriegman.**

**Memo Endorsed:** For reasons explained by this Court and Magistrate Judge Freeman at the November 17, 2021; August 12, 2022; and June 14, 2022 conferences, Movant Fatima Mirrow's renewed motion to quash or, in the alternative, to modify the subpoenas issued by Plaintiff is DENIED.

Movant's deposition shall take place by **July 29, 2022**. To the extent that the deposition does not take place by that date – and the parties are unable to agree on an alternative date – that deposition will take place in the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. No further delay will be tolerated.

The Clerk of Court is directed to terminate the motion at Docket Number 38.

Dated:  July 20, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge